United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WEBB,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>INDIGENOUS GLOBAL DEVELOPMENT, CORPORATION,<br><br>　　　　Defendant.<br>_____/ | No. C-04-3174 MJJ (EMC)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br>**(Docket No. 10)** |

　　　Plaintiff Keith Webb filed suit against Defendant Indigenous Global Development Corporation ("IGDC") for its failure to pay him $250,000 as required under a promissory note. The complaint was served on IGDC on August 6, 2004. After IGDC failed to respond, Mr. Webb asked for entry of default. The Clerk of the Court entered default on September 22, 2004, and Mr. Webb has now moved for a default judgment. Judge Jenkins has referred Mr. Webb's motion for default judgment to the undersigned for a report and recommendation.

　　　Having reviewed Mr. Webb's brief, accompanying submissions, and all other evidence in the record, the Court recommends that the motion be GRANTED.

### I.　FACTUAL & PROCEDURAL BACKGROUND

　　　On February 11, 2003, IGDC signed a promissory note, pursuant to which it would repay to Mr. Webb a loan of $250,000 by May 11, 2004. *See* Compl. ¶ 4 & Ex. A. Under the terms of the agreement, interest would not accrue on the loan. *See* Ex. A. Furthermore, IGDC promised to pay Mr. Webb an additional $250,000 from the profits it would make. *See id.* Notably, the promissory

note specified that it was to be "governed by and construed in accordance with and under the laws of the State of Delaware applicable to contracts wholly made and performed in such state." *Id.*

On May 24, 2004, Mr. Webb e-mailed Deni Leonard, the Chairman and CEO of IGDC, because IGDC had failed to pay back the loan of $250,000 by May 11 as promised. *See* Webb Decl., Ex. B (e-mail, dated 5/24/04). Mr. Webb stated in part: "I would appreciate you[r] wiring the principal payment of $250,000 this week the sooner the better. The balance of 250,000 can be payed [sic] per our agreement when the gas starts to move." *Id.* Mr. Leonard's response did not directly address the demand for repayment of the loan but did state that, "[a]s soon as the gas is flowing, I will forward you the capital from the invested proceeds from Japan." *Id.*

About a month later, Mr. Leonard, on behalf of IGDC, sent to Mr. Webb a letter, dated June 30, 2004, regarding an audit of IGDC. The letter asked Mr. Webb to confirm with its auditors that, as of June 30, IGDC had an outstanding promissory note due Mr. Webb worth $250,000. *See* Webb Decl., Ex. C. It appears that, in responding to the audit, Mr. Webb made several handwritten notes on the letter -- *e.g.*, that IGDC owed him an additional $250,000 and that the total owed "is 500K and is past due by 3 months." *Id.*

Apparently, IGDC did not thereafter make any payment of the money owed to Mr. Webb. Consequently, on August 4, 2004, Mr. Webb filed suit in this court. In his complaint, Mr. Webb asked for general damages in the amount of $250,000; prejudgment interest at the legal rate of 10 percent per year; reasonable attorney's fees and costs; and other such relief as might be deemed proper. In the pending motion for default judgment, Mr. Webb seeks only damages, interest, and costs.

## II.   DISCUSSION

A.   Adequacy of Service of Process

As a preliminary matter, the Court addresses the adequacy of the service of process on IGDC. *See Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001) (noting that, in deciding whether to grant or deny default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested").

1     Based on previous submissions from Mr. Webb, *see* Docket Nos. 4-5 (Webb's request to enter default and supporting declaration, filed on 9/16/04), it appears that the complaint was properly served on IGDC. The complaint was served by substitute service pursuant to California Code of Civil Procedure § 415.20(a) (copy left with person apparently in charge of office along with mailing to said address). *See* Fed. R. Civ. P. 4(h) (discussing service of process on a corporation, which includes service pursuant to the law of the state in which the district court is located or service effected). Mr. Webb's proof of service indicates IGDC was served at the proper address of IGDC's agent, Mr. Deni Leonard, as recorded by the California Secretary of State, Corporations Division. *See* Malek Decl. Supporting Plaintiff's Request for Entry of Default, Exs. A, B.

        Although the process server's declaration fails to identify the person "apparently in charge" of the office of the person to be served, California case law indicates that this should not be a bar. *See Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1394 (1992) (rejecting argument that service was improper because declaration of process server did not identify the person to be served on behalf of the corporation; stating that "minor, harmless deficiencies will not be allowed to defeat service"). The server states that, while not identifying the person actually served, the server "informed him or her of the general nature of the papers" and made the delivery to the person "apparently in charge" and mailed a copy to the proper address. *See* Malek Decl. Supporting Plaintiff's Request for Entry of Default, Ex. B. Therefore, with the complaint being properly served to the authorized agent of IGDC at the correct address of IGDC, Mr. Webb has satisfied the service requirements necessary to obtain a default judgment.

B.      Default Judgment and *Eitel* Factors

        Because service appears to have been proper, the Court now addresses the merits of Mr. Webb's motion for default judgment. After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute

3

> concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because, as noted above, default has already been entered in this case, the Court must take as true all factual allegations in Mr. Webb's complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotation marks omitted).

### 1. Possibility of Prejudice to Plaintiffs

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Based on the documents submitted by Mr. Webb, *see* Webb Decl., Exs. B-C, it appears that IGDC does not contest the fact that it owes Mr. Webb at least $250,000, and, for almost a year, this sum has been due without even a partial repayment by IGDC. Furthermore, prior to bringing suit, Mr. Webb made at least one demand for repayment from IGDC but without any success. The Court therefore concludes that Mr. Webb would suffer prejudice if his motion for default judgment were denied because he would be "without other recourse for recovery." *Id.*; *see also Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claim.").

### 2. & 3. Merits of Plaintiffs' Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (internal quotation marks omitted). In the instant case, Mr. Webb's claim for relief must be based on Delaware law because the promissory note specifically provides that "the laws of the State of Delaware applicable to contracts" should govern. Compl., Ex. A.

Under Delaware law, a promissory note is ordinarily governed by the Delaware Uniform Commercial Code. *See* 6 Del. C. § 3-104 (defining negotiable instruments). If the Note adds "any

4

other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money" that is not related to the collateral in the Note, then it is deemed a non-negotiable instrument and is governed by Delaware contract law. *See Id.* § 3-104(a). Whether proceeding under the Delaware Uniform Commercial Code or Delaware contract law, Mr. Webb has sufficiently stated a valid claim for a breach of IGDC's promissory note. By simply showing that IGDC executed a valid promissory note promising to unconditionally pay Mr. Webb $250,000, and that payment is overdue, Mr. Webb has adequately stated a claim under the Delaware Uniform Commercial Code. *See Id.* § 3-304 (stating when an instrument is overdue); *Id.* § 3-301 (stating who can recover on an overdue instrument).

If the Promissory note at issue were to fall outside the Delaware Uniform Commercial Code, Mr. Webb has also sufficiently stated a valid claim under Delaware Contract law. To establish a *prima facie* case for breach of contract, Mr. Webb must "show a contractual obligation on the part of the defendant[], a breach of that obligation, and damages to [himself] as a result of that breach." *Wexford LLC v. Encorp. Inc.,* 832 A.2d 129, 144 (Del. Ch. 2003). In his complaint, Mr. Webb alleges that he loaned IGDC $250,000 and that IGDC in turn promised to pay back the loan by May 11, 2004; however, IGDC never paid this amount as promised, thus causing at least general damages in the amount of the loan. Given these allegations, the Court concludes that Mr. Webb has adequately stated a claim for breach of a promissory note.

### 4. Sum of Money at Stake in Action

For the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate considering the defendant's actions, default judgment is disfavored. *See Board of Trustees of the Cal. Metal Trades v. Pitchometer Propeller*, 984 F. Supp. 978, 978 (N.D. Cal. 1997) (in granting default judgment, noting that "[t]he amount of money at stake is reasonable, properly documented and contractually justified"); *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *5 (N.D. Cal. Dec. 29, 2000) (holding that this factor "favors entry of default judgment" where "[t]he amount at stake is minor in comparison to the potential loss . . . as a result of defendants'

conduct"). In the instant case, the main damage award sought by Mr. Webb is the $250,000 loan he made to IGDC. Given that this damage request is tailored specifically to the breach by IGDC, the Court finds that the amount of money at stake is reasonable.

5.  Possibility of Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *Elektra Entertainment Group, Inc. v. Bryant*, No. CV 03-6381 GAF (JTLX), 2004 WL 783123, at *4 (C.D. Cal. Feb. 13, 2004). Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Mr. Webb's complaint as true (except for those relating to damages) and (2) IGDC has not made any attempt to challenge Mr. Webb's complaint or even appear in this case. *See id.* Moreover, the Court notes that a dispute over material facts is unlikely because IGDC has essentially acknowledged the debt of $250,000 as reflected in the audit letter IGDC sent to Mr. Webb on June 30, 2004. *See* Webb Decl., Ex. C.

6.  Whether Default Was Due to Excusable Neglect

Usually, a court will ask whether the failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472 (noting that the fact that the parties were engaged in settlement negotiations excused defendant from failing to answer). In the instant case, IGDC was properly served with the summons and complaint on August 6, 2004; with the request to enter default on September 15, 2004; and with the application for default judgment on February 2, 2005. *See* Malek Decl. In Support of Entry of Default, Ex. B; Malek Decl. In Support of Application for Default Judgment, at 5. Given these circumstances, it is unlikely that IGDC's failure to answer and consequently default was a result of excusable neglect. *Cf. Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (concluding no excusable neglect because defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7.  Policy Underlying Federal Rules of Civil Procedure

Generally, default judgments are disfavored because "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, because a discretionary

6

1  standard is applied, "default judgments are more often granted than denied." *Pepsico v. Triunfo-*
2  *Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal.1999). In this case, Mr. Webb diligently attempted to
3  contact IGDC concerning the breached promissory note both before and after the initiation of this
4  lawsuit and he has specifically pled facts supporting his claim; therefore, the policy encouraging
5  decisions of cases on their merits does not weigh against granting default judgment here. *See*
6  *Elektra Entertainment Group Inc.*, 2004 WL 783123, at *5 (stating that "the mere existence of Fed.
7  R. Civ. P. 55(b) indicates that [this factor] is not alone dispositive" given the impossibility of
8  deciding a case on the merits when the defendant fails to respond).

       8.    Summary

Based on all the *Eitel* factors discussed above, the Court recommends that Mr. Webb's motion for default judgment be granted.

C.    Damages

Having determined that Mr. Webb's motion should be granted, the Court now turns to the matter of damages. Mr. Webb seeks $250,000 in general damages; $18,081.36 in prejudgment interest from May 12, 2004, to January 31, 2005, plus $68.49 per day thereafter; and $274.50 in costs. Mr. Webb bears the burden of proving damages resulting from the breached promissory note. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

       1.    Breach of Contract Damages

The Court recommends that Mr. Webb be awarded the full $250,000 he seeks as general damages. Mr. Webb has provided the Court with a copy of the promissory note signed by IGDC which specifically states that IGDC must "repay the principal sum of $250,000 to [Mr. Webb] on or before May 11, 2004." In addition, Mr. Webb has given the Court a copy of the audit letter sent to him by IGDC, which acknowledges the $250,000 debt. *See* Webb Decl., Ex. C (stating that the "[u]npaid principal due you" is $250,000). These documents constitute sufficient proof that Mr. Webb has sustained damages for the breach of contract in the amount of $250,000.

      2.      Prejudgment Interest

In addition to general damages for breach of contract, Mr. Webb seeks $18,081.36 in prejudgment interest from May 12, 2004, to January 31, 2005, as well as $68.49 per day thereafter. In her declaration, Mr. Webb's counsel explains that she calculated this amount based on the legal rate of 10 percent (on the judgment of $250,000) pursuant to California Civil Code § 3289. However, counsel's reliance on California law is misplaced because the promissory note specifically provides that it is to be governed by Delaware law, not California law.[1]

Delaware courts generally look to 6 Delaware Code § 2301(a) for guidance in determining the appropriate amount of prejudgment interest for a breach of contract. *See Rollins Environmental Services, Inc. v. WSMW Industries, Inc.*, 426 A.2d 1363 (Del. Sup. Ct. 1980) (applying 6 Del. C. § 2301(a) to a breach of contract action where plaintiff sought prejudgment interest); *American Original Corp. v. Legend, Inc.*, 689 F.Supp. 372, 383 (D. Del. 1988) (applying § 2301(a) to determine prejudgment interest on damages of $958,832 for contract governed by Delaware law); *F.E. Myers Co. v. Piope Maintenance Services, Inc.*, 599 F.Supp. 697, 704 (D. Del. 1984) (also applying §2301(a) to determine prejudgment interest). The statute lays out two tests for determining the rate that a lender may charge a borrower. For contracts with an express rate, the legal interest rate is set "at the rate in the contract sued upon" if the rate was "agreed upon in writing not in excess of 5% over the Federal Reserve discount rate." 6 Del. C. § 2301(a). For contracts with no express rate, "the legal rate of interest shall be 5% over the Federal Reserve discount rate." *Id.*

In the instant case, the promissory note specifies that "[i]nterest shall not accrue on the unpaid principal balance of this Note and the annual interest shall be zero percent." Compl., Ex. A. However, the Court does not read this provision to mean that Mr. Webb is precluded from seeking prejudgment interest once IGDC breached the promissory note by failing to pay back the loan by May 11, 2004. Rather, taking into consideration the circumstances and context of the note, the

---

[1] Under Delaware law, whether a party is entitled to interest appears to be a matter of substantive law. *See Thompson v. State Board of Pension Trustees*, 552 A.2d 850, 852 (Del. Sup. Ct. 1988) ("The allowances of interest is in the nature of damages; it is as much of an injured plaintiff's substantive right as the right to damages themselves."). The Court therefore need not discuss whether the promissory note's choice-of-law provision implicated only Delaware substantive law or both substantive and procedural law.

8

reasonable interpretation of this provision is that, until the loan was due to be repaid on May 11, 2004, no interest would accrue on the loan. *See Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, (Del. Ch. 2003) (Court will interpret the contract's terms according to the meaning that would be ascribed to them by a "reasonable third party" and can use the "business context" and other extrinsic evidence to determine this interpretation ).

Therefore, with no express contract rate identified in the promissory note, the prejudgment interest should be set at 5 percent over the Federal Reserve discount rate. *See* 6 Del. C. § 2301(a); *see also Rollins*, 426 A.2d at 1368 (stating that "the rate of interest is calculated according to the Federal Reserve discount rate as of the date of commencement of interest liability *and it remains at that fixed rate*") (emphasis added); *Weinberger v. UOP, Inc.*, 517 A.2d 653, 657 (Del. Ch. 1986) (interpreting 6 Del. C. § 2301(a) as "providing only simple interest"); *Marsico v. Cole*, Civ. A. No. 13104, 1995 WL 523586, at *7 (Del. Ch. Aug. 15, 1995) (awarding simple interest per annum); *Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1093 (1995) (affirming per annum interest award pursuant to 6 Del. C. § 2301(a)). The Court takes judicial notice that the Federal Reserve discount rate (for primary credit) in May 2004 was 2 percent. *See* http://www.federalreserve.gov/monetarypolicy/discountrate.htm (last visited 4/13/05) (defining discount rate as "the interest rate charged to commercial banks and other depository institutions on loans they receive from their regional Federal Reserve Bank's lending facility--the discount window"); http://www.frbdiscountwindow.org/historicalrates.cfm?hdrID=20&dtlID=52 (last visited 4/13/05) (providing historical discount rates). Thus, the proper interest rate in this case is 7 percent. At 7 percent, the annual interest for the $250,000 loan is $17,500, or $47.95 per day. That is, Mr. Webb is entitled to prejudgment interest from May 12, 2004, to the day judgment is entered at the rate of $47.95 per day.

3.  Costs

Finally, Mr. Webb seeks $274.50 in costs arising from his filing fee and service fee. In this District, a prevailing party may recover the Clerk's filing fee "if paid by the claimant" and fees for service of process "to the extent reasonably required and actually incurred." Civ. L.R. 54-3(a)(1). Mr. Webb has provided sufficient documentation to show that he is entitled to these fees.

## II.  CONCLUSION

For the foregoing reasons, this Court recommends that Mr. Webb's motion for default judgment be granted and that Mr. Webb be awarded $250,000 in damages for breach of contract; prejudgment interest as described above; and $274.50 in costs.

Dated:  April 29, 2005

                                                                             /s/  
                                              EDWARD M. CHEN  
                                              United States Magistrate Judge

**United States District Court**  
For the Northern District of California